## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | Civil No. |
| | : | |
| $34,902.01 SEIZED FROM UNION SAVINGS BANK ACCOUNT NUMBER XXXXX7739 HELD IN THE NAME OF ALEXANDER HALIM; | : : : : | |
| | : | |
| $15,680.43 SEIZED FROM WELLS FARGO ADVISORS ACCOUNT NUMBER XXXX8310 HELD IN THE NAME OF ALEXANDER HALIM; | : : : : | |
| | : | |
| ONE PARCEL OF PROPERTY LOCATED AT 1 CHARD ROAD, NEW MILFORD, CONNECTICUT, WITH ALL APPURTENANCES AND IMPROVEMENTS THEREON; | : : : : : | |
| | : | |
| Defendants. | : | |
| | : | |
| [CLAIMANTS:  ALEXANDER HALIM; MARIA BATISTA] | : : | February 20, 2015 |

VERIFIED COMPLAINT OF FORFEITURE

Now comes Plaintiff, United States of America, by and through its attorneys, Deirdre M.

Daly, United States Attorney for the District of Connecticut, and David X. Sullivan, Assistant

United States Attorney, and respectfully states that:

1.     This is a civil action in rem brought to enforce the provision of 21 U.S.C. §

881(a)(7), which provides for the forfeiture of real property located at 1 Chard Road, New

Milford, Connecticut, which was used or intended to be used in any manner or part to commit or

to facilitate the commission of the Controlled Substances Act, 21 U.S.C. §§ 801 et seq.; and

pursuant to 21 U.S.C. § 881(a)(6) for the forfeiture of $34,902.01 seized from Union Savings

Bank account number XXXXX7739 held in the name of Alexander Halim and for the forfeiture

of $15,680.43 seized from Wells Fargo Advisors account number XXXX8310 held in the name

of Alexander Halim which proceeds were derived from the sale of illegal narcotics in violation

of the Controlled Substances Act, 21 U.S.C. §§ 801 et seq.

2.     This Court has jurisdiction over this matter by virtue of 28 U.S.C. §§ 1345 and

1355.

3.     Venue is appropriate in the District of Connecticut by virtue of 28 U.S.C. § 1395(b).

4.     The Defendant Currency is located within the jurisdiction of this Court.

5.     The Defendant Property is one parcel of property located at 1 Chard Road, New

Milford, Connecticut, with all appurtenances and improvements thereon.

6.     The United States does not request authority from the Court to seize the

Defendant Property at this time.  The United States will, as provided by 18 U.S.C. §§ 985(b)(1)

and (c)(1):

a)     Post notice of this action and a copy of the Complaint on the Defendant Property;

b)     Serve notice of this action on the record owner of the Defendant Property, and any other

person or entity who may claim an interest in the Defendant Property, along with a copy of this

Verified Complaint of Forfeiture;

c)     Execute a Writ of Entry for the purposes of conducting an inspection and inventory of the

property; and

d)     Record a Lis Pendens on the New Milford Land Records of the Defendant Property's

status as the Defendant in this in rem action.

7.      The United States will also, as provided by 19 U.S.C. § 1606, appraise the Defendant Property when it executes the Writ of Entry.

8.      The appraised value of the Defendant Property is $235,700.   The Defendant Property was acquired by Maria Batista from Eduardo Batista for $1.00 on January 24, 1986 by Warranty Deed, recorded on January 24, 1986, at Volume 339, Page 442 of the New Milford Land Records.

### Background of Investigation

9.      On January 26, 2014, a Connecticut State Trooper conducted a motor vehicle stop of an automobile being driven by Mohamed Alexander Halim ("Halim").  While speaking to Halim, the officer noticed the odor of marijuana emanating from the car.  When asked about the odor, Halim voluntarily produced to the officer a bag containing marijuana.  When returning to his cruiser, the trooper saw Halim throw a different plastic bag from his vehicle.  Upon inspection, the bag was found to contain hallucinogenic mushrooms.  Halim was searched and $1,800 in United States Currency was discovered on his person.  A search of Halim's vehicle yielded an additional amount of marijuana and $26,000 in United States Currency.

10.  Halim agreed to cooperate with law enforcement and told them that there was an unidentified white male who lived in Connecticut near the Rhode Island border who was a large scale marijuana distributer.  Halim said the individual imported marijuana from California and also cultivated marijuana in several residences in the Connecticut/Rhode Island area and distributed it in Connecticut and Rhode Island.  Halim told law enforcement that the $26,000 discovered in his vehicle and the $1,800 on his person were to be used to purchase ten pounds of

marijuana from this individual that night.  Halim later told law enforcement that he had

withdrawn this money from his accounts in small amounts to avoid bank reporting requirements

and to avoid raising suspicion.  Halim provided law enforcement with the unknown white male's

cellular telephone number.

**Consensual Search of 1 Chard Road**

11.  Halim admitted to law enforcement that he had additional marijuana located at his

residence and consented to a search of his residence located at 1 Chard Road, New Milford,

Connecticut.  Halim's sister was present at the residence at the time of the search.  Inside

Halim's residence, law enforcement seized an additional eight pounds of marijuana, three ounces

of psychedelic mushrooms, $3,000 in United States Currency, scales, packaging materials, and

Webster Bank account statements.  In plain view, located in the hallway between Halim's

bedroom and his mother, Maria Batista's bedroom, a heat sealing machine commonly used to

package marijuana for sale and distribution was plugged into the wall.

12.  Halim was arrested and charged with Possession of Greater than Four Ounces of

Marijuana, Possession with Intent to Sell Narcotics, Sale of a Controlled Substance, Possession

of Drug Paraphernalia, Resisting Arrest, and Sale of Narcotics within 1,500 Feet of a School.

13.  On January 27, 2014, law enforcement executed State of Connecticut Search and

Seizure Warrants on a Webster Bank checking account and a Webster Bank savings account in

Halim's name.  Seized from the checking account was $2,523.86.  In addition, $12,891.39 was

seized from the savings account.  Law enforcement discovered that Halim made a $110,000.00

withdrawal from his Webster Bank savings account on December 26, 2013 and deposited the

money into an account held by his father, Ahmed Abdel-Halim.  Law enforcement executed a

Search and Seizure Warrant on Ahmed Abdel-Halim's account and seized $74,105.35.  When

law enforcement asked Halim if the money in his checking and savings accounts was from

selling marijuana, Halim said "yes."

14.   Halim told law enforcement that he had been dealing marijuana since around 2008

only stopping for a while when he was "busted" by law enforcement.  Halim said he would make

an average of $60,000 a year selling marijuana and in his best year he made approximately

$100,000.  Halim told law enforcement he would purchase marijuana for approximately $2,750

per pound and sell it in smaller quantities for $250 to $300 per ounce.  Halim said he made

around $500 a week working at Alexander's, a restaurant owned by him and his father.  Halim

further stated that he used some of his marijuana profits to buy an Acura TL and that some

money went into the restaurant.

15.  On January 30, 2014, Halim accompanied law enforcement to the Rhode

Island/Connecticut border to assist in identifying residences associated with the marijuana

cultivation.  Halim identified 17 Fairground Way in Scituate, Rhode Island as one of the

locations that he had met the unknown male concerning marijuana.  Law enforcement

determined that the cell phone number provided by Halim on January 26, 2014, was utilized by

an individual named Jeremy Corrao ("Corrao").  A State of Connecticut Department of Motor

Vehicle search using Corrao's name and date of birth showed he had a Connecticut residence

located at 35 Dydo Drive in Uncasville.  Halim positively identified Corrao as the male involved

in the marijuana transactions from his driver's license photograph.

**Halim's Source of Supply**

16.  On February 5, 2014, Halim received a telephone call from Corrao informing him that Corrao had ten pounds of marijuana ready for delivery to Halim the next day.[1]  Corrao told Halim that a member of Corrao's organization would be delivering the marijuana to Halim in Connecticut between one and two o'clock in the afternoon.

17.  On February 6, 2014, law enforcement established surveillance at 1 Chard Road, the prearranged location for the marijuana transaction.  At approximately 1:40 p.m., a red colored Chevrolet pickup truck turned into the driveway of 1 Chard Road.  Law enforcement approached the vehicle and attempted to interview the individual, later identified as Jason Dorchester ("Dorchester").  Law enforcement used a narcotics detecting canine to conduct an open air sniff of Dorchester's vehicle.  At that time, the canine alerted to the presence of narcotics at the driver's side door and on a metal tool-style storage box located in the bed of the truck.

18.  A search of the vehicle's storage box yielded a large, black colored garbage bag which contained several heat sealed plastic bags containing a total of ten pounds of marijuana.

19.  After being advised of his Miranda rights, Dorchester agreed to cooperate and speak with law enforcement.  He told law enforcement that he worked for a white male named "Jeremy," who heads a large scale marijuana trafficking organization that supplies customers in Connecticut and Rhode Island.  Dorchester said he had been working for Jeremy for

---

[1] Corrao and Halim had arranged this marijuana transaction prior to Halim being stopped by law enforcement on January 26, 2014

approximately one year and that he normally delivered between ten and twenty pound packages

of marijuana to customers for which Jeremy paid him $100 per pound delivered.  Dorchester told

law enforcement that after he made the deliveries, he would meet Jeremy at one of several

residences where Jeremy had established indoor marijuana grows.  Dorchester said Jeremy lived

in Connecticut and drove an Acura MDX with Connecticut license plates.  Dorchester then

positively identified Jeremy Corrao from a Connecticut driver's license photograph.

20.  Dorchester told law enforcement that Corrao's marijuana operation was interstate

and that he had numerous individuals involved, each with different responsibilities.  Dorchester

said some individuals tended to the marijuana grows located at four houses that Dorchester had

personal knowledge of.  Corrao had other individuals working as look-outs near the grow houses.

Others were employed to transport or deliver marijuana to customers.  Dorchester also told law

enforcement that Corrao would import between 350 to 500 pounds of marijuana at a time from a

source of supply in California.  Dorchester said that Corrao would store the marijuana in a

storage facility located in Connecticut near the Rhode Island border.

21.  Dorchester told law enforcement that Corrao often bragged about how lucrative his

marijuana trafficking business was.  Corrao told Dorchester that he had to install a large safe at

his residence for all of the money.  Corrao has also bragged that he had so much money that he

did not count it, he weighed it.  Dorchester identified another individual named "Ross" as the

second in command of Corrao's organization.  Dorchester also told law enforcement that Corrao

was affiliated with a business in Rhode Island that sells indoor marijuana growing equipment to

the public.  Law enforcement later identified this business as "Solar Seed Hydroponics," located

at 2406 Putnam Turnpike, Chepachet, Rhode Island.  Dorchester identified the residence at 15

Carue Drive, Scituate, Rhode Island as the location where he picked up the marijuana that was delivered to Halim.

22. On February 6, 2014, law enforcement established surveillance at Solar Seed Hydroponics and observed an Acura MDX being driven by Jeremy Corrao arriving at the establishment. Corrao entered the store and exited a short time later. Law enforcement followed Corrao to 613 Providence Pike in Danielson, Connecticut ("613 Providence Pike"). Corrao entered 613 Providence Pike and a short time later was observed leaving the location in a Lexus SUV. A Department of Motor Vehicle check revealed that a 2014 Lexus GX 460 is registered in the name of Jeremy Corrao of 35 Dydo Drive, Uncasville, Connecticut. While maintaining surveillance at Solar Seed Hydroponics, law enforcement observed a Lexus RX330 arrive at the site. The Lexus RX330 was registered to an individual named Laurel Horne of 613 Providence Pike, Danielson, Connecticut. Law enforcement then followed Horne from the hydroponics store in Rhode Island to 613 Providence Pike.

23. On February 7, 2014, law enforcement executed a State of Connecticut Search and Seizure Warrant on 613 Providence Pike. Officers seized $268,741.00 in United States Currency that was located in the following places throughout the residence: $814.00 from under a mattress in the master bedroom; $931.00 from inside a dresser; $20.00 from on top of the dresser; $929.00 from the master bedroom dresser; $12,610.00 from a bag behind the master bedroom nightstand; $3,620.00 from a purse in the master bedroom closet; $702.00 from underneath the dresser in the master bedroom; $94,265.00 from inside of the master bedroom closet; $154,870.00 from behind a television stand in the basement. Law enforcement seized $5,000.00 from inside of Laurel Horne's Lexus. Also seized by law enforcement at this time was a money

counting machine, a digital scale, a large clear plastic baggie containing 1.1 pounds of marijuana, a large plastic tub containing numerous baggies containing 541 grams of marijuana, and six cell phones.

24.  When the search warrant was executed on February 7, 2014, an individual named Randee Thompson was located in the driveway of 613 Providence Pike.  She told law enforcement that Corrao was a marijuana grow consultant.  She said that she delivered marijuana for Corrao and helped him set up indoor grows.  Law enforcement seized $15,020.00 from a purse located in Thompson's vehicle.  Thompson said she lived at 613 Providence Pike with Corrao and Horne.

25.  Law enforcement executed search and seizure warrants on Jeremy Corrao's bank accounts located at Charter Oak Credit Union and Citizen's Bank.  From the Charter Oak account $1,171.58 was seized, and from the Citizen's Bank account, law enforcement seized $3,711.81.

26.   On February 7, 2014, law enforcement arrested Christopher Goyette, an employee of Corrao's in Rhode Island.  Goyette told law enforcement that he delivered approximately fifteen pounds of marijuana on each trip for Corrao on four or five occasions.  He told law enforcement that the marijuana that police found in the trunk of his car when he was pulled over on February 7 was picked up by him from Corrao at 613 Providence Pike.

27.   The Drug Enforcement Administration ("DEA") provided Jeremy Corrao, Laurel Horne, and Randee Thompson notice of potential administrative forfeiture regarding the $268,741.00 seized from 613 Providence Pike and provided each with an opportunity to file an

administrative claim of interest to the money.  The deadline for filing any administrative claims

was July 31, 2014, and no claims were filed.

28.    The DEA also provided administrative notice for the following seized assets:

$1,800.00 from Halim's person; $26,000.00 from Halim's vehicle; $3,000.00 from Halim's

residence; $74,105.35 from Halim's father's bank account; $5,000.00 from Laurel Horne's

motor vehicle located at the 613 Providence Pike; $15,202.00 from Randee Thompson's motor

vehicle located at 613 Providence Pike; and $4,883.39 from two of Jeremy Corrao's bank

accounts.  No administrative claims of interest were filed with the DEA on any these seized

assets, which were forfeited administratively to the United States through the DEA.

## Halim's Continued Sale of Marijuana

29.    During the first week of September, 2014, law enforcement received information

from a Cooperating Witness ("CW") that a white male named Alex was selling large amounts of

marijuana throughout the New Milford, Connecticut area.  The CW further identified Alex as

Alex Halim from a Department of Motor Vehicle photograph provided by law enforcement.

This was the same Alex Halim who was stopped on January 26, 2014 with $26,000 in United

States Currency that he admitted was going to be used to purchase ten pounds of marijuana and

was subsequently arrested for criminal violations of the States of Connecticut's drug laws.[2]  The

CW agreed to assist law enforcement with its investigation of Halim by making controlled

purchases of marijuana from Halim.

---

[2] As of the filing of this Verified Complaint of Forfeiture, Alexander Halim's State of
Connecticut criminal charges arising from the January, 2014 incident remain pending in the
Litchfield Superior Court.

30.     During the first week of September, 2014, law enforcement met with the CW to coordinate a controlled purchase of marijuana from Halim.  Law enforcement searched the CW and his/her vehicle for contraband with negative results.  The CW contacted Halim on Halim's cell phone and arranged for the purchase of marijuana at a location in New Milford.  The CW was provided with recorded law enforcement funds to make the purchase and was outfitted with a listening device.  The CW departed to make the purchase and law enforcement kept the CW under constant surveillance to the first prearranged meeting place.

31.     At the location, law enforcement observed a silver colored Acura with Connecticut registration 770ZZU pull up next to where the CW was waiting.  A Department of Motor Vehicles check revealed that the Acura was registered to Mohamed Alexander Halim of 1 Chard Road, New Milford, Connecticut.  Halim then followed the CW's vehicle to a second arranged location in New Milford.  At this location, law enforcement observed the CW meeting with Halim and followed their conversation on the listening device.  Halim told the CW that he got his marijuana from two separate suppliers.  Halim said he sold high grade marijuana in smaller amounts because he made the most money that way.  After a short period of time, Halim got back in his Acura and was surveilled returning to his residence at 1 Chard Way with the recorded law enforcement funds.

32.  The CW met with law enforcement at their prearranged location where the CW turned over to law enforcement a clear plastic baggie containing a green plant-like substance. The substance field-tested positive for the presence of marijuana.

33.    During the first week of October, 2014, law enforcement met with the CW to coordinate another controlled purchase of marijuana from Halim.  Law enforcement searched the CW and his/her vehicle for contraband with negative results.  The CW contacted Halim on Halim's cell phone and arranged for the purchase of marijuana at a prearranged location in New Milford.  The CW was provided with recorded law enforcement funds to make the purchase and was outfitted with a listening device.  The CW departed to make the purchase and law enforcement kept the CW under constant surveillance to the prearranged meeting place.

34.     At the same time other members of law enforcement established surveillance in and around the parking lot of Alexander's restaurant in Brookfield, Connecticut.  Halim works and is a co-owner, with his father, of Alexander's.  Alexander's is owned and operated by Chard LLC, which lists its address as 1 Chard Road, New Milford, Connecticut.  Law enforcement located Halim's Acura in the parking lot of Alexander's.  Halim was then observed leaving the restaurant and carrying something in his hands as he walked and entered the Acura.  Halim was then followed by law enforcement to the pre-arranged location to meet with the CW.  Halim was observed by law enforcement meeting with the CW at this location.

35.    The CW met with law enforcement at their prearranged location where the CW turned over to law enforcement two clear plastic baggies containing a green plant-like substance.  The substance field-tested positive for the presence of marijuana.

36.   The CW told law enforcement that he met with Halim at the pre-arranged location and exchanged the recorded law enforcement funds for the two baggies of marijuana.  The CW said that when Halim exited his Acura he was holding a cake box that contained a large amount

of marijuana.  Halim put the box in the trunk of the Acura and told the CW that he had to deliver

marijuana to another customer.

### Search Warrant Executed at 1 Chard Road

37.    On October 15, 2014, law enforcement applied for and received a State of

Connecticut Search and Seizure Warrant for Halim's residence located at 1 Chard Road, New

Milford, Connecticut (the "Defendant Property").  On October 22, 2104, law enforcement

executed the search warrant on the Defendant Property.  A systematic search of the Defendant

Property was conducted and the following was seized:  $7,373 in United States Currency;

approximately six pounds of marijuana; 0.4 ounces of psychedelic mushrooms; numerous boxes

of plastic baggies; digital scales; multiple cellular phones; an electric bill from North American

Power in the name of Mr. Alex Halim, 1 Chard Road, New Milford, Connecticut; a Union

Savings Bank receipt for account number XXXXX7739; and a Wells Fargo Advisors receipt for

account number XXXX8310.

38.    Halim's mother, Maria Batista, came home while the One Chard Road residence

was being searched.  She told law enforcement that, "he (Halim) doesn't learn his lesson."  She

further stated that, she "doesn't know why he's doing this, he's a good boy."

39.    Halim was arrested and charges with Possession of Greater than Four Ounces of

Marijuana, Possession with Intent to Sell Narcotics, and Possession of Drug Paraphernalia.

40.    On October 22, 2014, law enforcement executed seizure warrants for the Union

Savings Bank and Wells Fargo Advisors accounts.  Law enforcement seized $34,902.01 from

Union Savings Bank account number XXXXX7739 and $15,680.43 from Wells Fargo Advisors account number XXXX8310.

41.     Based on the above information, it is believed that: $34,902.01 seized from Union Savings Bank account number XXXXX7739 held in the name of Alexander Halim and $15,680.43 seized from Wells Fargo Advisors account number XXXX8310 held in the name of Alexander Halim constitute proceeds from the illegal sale and distribution of narcotics and are therefore subject to forfeiture pursuant to 21 U.S.C. Section 881(a)(6).

42.     The Defendant Currency represent proceeds traceable to the exchange of controlled substances in violation of the Controlled Substances Act, 21 U.S.C. §§ 801 et seq., and are, therefore, subject to forfeiture to the United States of America pursuant to 21 U.S.C. § 881(a)(6).

WHEREFORE, the United States of America prays that Warrants of Arrest In Rem be issued for:  $34,902.01 seized from Union Savings Bank account number XXXXX7739 held in the name of Alexander Halim and $15,680.43 seized from Wells Fargo Advisors account number XXXX8310 held in the name of Alexander Halim; that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring the property to be condemned and forfeited to the United States of America for disposition according to law; and that the United States of America be granted such other relief as this Court may deem just and proper, together with the costs and disbursements of this action.

43.     The Defendant, one parcel of property located at 1 Chard Road, New Milford, Connecticut, with all appurtenances and improvements thereon, is subject to forfeiture under 21 U.S.C. § 881(a)(7), for the forfeiture of real property which was used or intended to be used in any manner or part to commit or to facilitate the commission of a violation of the Controlled

Substances Act, 21 U.S.C. §§ 801 et seq.

WHEREFORE, the United States of America respectfully asserts that there is probable cause to believe that the Defendant Property is forfeitable to the United States pursuant to 21 U.S.C. § 881(a)(7); and requests,

(a)  that pursuant to 18 U.S.C. § 985(b)(2), and 18 U.S.C. § 983(j), which permits the Court to "take any action to . . . preserve the availability of the property subject to civil forfeiture," the Court issue the proposed Writ of Entry attached to this Verified Complaint of Forfeiture authorizing the United States Marshals Service, or its delegate, to enter the Defendant Property, including any structures, on one or more occasions during the pendency of this in rem forfeiture action:

1. for the purpose of conducting an inspection and inventory and appraisal of the Defendant Property, which inspection and inventory and appraisal may include still and video photography;

2. to be accompanied on any such occasion by any appraiser(s) selected by it to appraise the condition and value of the Defendant Property pursuant to 19 U.S.C. § 1606;

3.  to be accompanied on any such occasion by any government or contract personnel selected by it for the purpose of conducting an inventory of the Defendant Property; and

4. to be accompanied on any such occasion by any federal, state, or local law enforcement officers selected by it to ensure the safety of any person acting under the Writ of Entry;

(b)  that the Court enter a decree for the forfeiture of the Defendant, one parcel of property located at 1 Chard Road, New Milford, Connecticut, with all appurtenances and improvements thereon, to the United States under 21 U.S.C. § 881(a)(7)  is confirmed, enforced,

and ordered;

(c) that the Court award Plaintiff United States all other relief to which it is entitled,

including the costs of this action.

Respectfully submitted,

DEIRDRE M. DALY
UNITED STATES ATTORNEY

   /s/ John B. Hughes
JOHN B. HUGHES
CHIEF, CIVIL DIVISION
ASSISTANT U. S. ATTORNEY

*/s/ David X. Sullivan*
DAVID X. SULLIVAN
ASSISTANT U.S. ATTORNEY
157 CHURCH STREET, 25TH FLOOR
NEW HAVEN, CT  06510
(203) 821-3700
FEDERAL BAR # ct03793
David. Sullivan@usdoj.gov

16

DECLARATION

I am a Special Agent for the Drug Enforcement Administration, and the agent assigned the responsibility for this case.

I have reviewed the contents of the foregoing Verified Complaint of Forfeiture and the statements contained therein are true to the best of my knowledge and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 19th day of February, 2015.


   */s/ Christopher Matta*
CHRISTOPHER MATTA
SPECIAL AGENT
DRUG ENFORCEMENT ADMINISTRATION

EXHIBIT A

FIRST PARCEL
ALL THAT certain piece or parcel of land situate in the Town of New Milford, County of Litchfield, State of Connecticut, in Park Lane District so-called and being more particularly described as follows:

| | |
|---|---|
| NORTHERLY: | 100 feet by other land of Charles Winheim; |
| EASTERLY: | 166 feet by land now or formerly of Harriet M. Howland; |
| SOUTHERLY: | 100 feet by land of the Connecticut Light & Power Co; and |
| WESTERLY: | 163 feet by land now or formerly of Harriet M. Howland. |

BEING the same premises conveyed to William W. Siepmann and Antoinette Siepmann by Warrant Deed from Harriet M. Howland dated July 15, 1964, recorded July 15, 1964 in Volume 162 at Page 53 of the New Milford Land Records.

SECOND PARCEL
A CERTAIN piece or parcel of land situated in the Park Lane West District of the Town of New Milford, County of Litchfield and State of Connecticut, and more particularly bounded and described as follows:

BEGINNING at a point which point is marked by an iron pipe and which point marks the northwesterly corner of the herein described premises, the southwesterly corner of premises owned by Raymond J. and Margaret P. O'Brien, Jr., South 87° 49' 30" East a distance of 99.87 feet to an existing iron pipe, continuing thence along land of John Bateman South 89° 40' 37" East a distance of 150.13 feet to an existing iron pipe which pipe marks the northeasterly corner of the herein described premises, continuing thence South 0° 15' 13" East a distance of 172.07 feet to a drill hole located in the center line of a stonewall; continuing thence along land of the Connecticut Light & Power Company North 86° 59' 27" West a distance of 250 feet along the center line of said stone wall to an iron pipe, continuing thence along land of Charles Winheim North 0° 21' 41" West a distance of 163.58 feet to the point and place of beginning, containing 0.957 acres.